UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20521-BLOOM/Otazo-Reyes

BEVERLEY B. SCHOTTENSTEIN,
Individually and as Co-Trustee Under the
Beverley B. Schottenstein Revocable
Trust U/A/D April 5, 2011, as Amended,

    Petitioner,

v.

J.P. MORGAN SECURITIES, LLC;
EVAN A. SCHOTTENSTEIN; and
AVI E. SCHOTTENSTEIN,

    Respondents.
_____/

**ORDER CONFIRMING ARBITRATION AWARD
AND DENYING MOTION TO VACATE ARBITRATION AWARD**

**THIS CAUSE** is before the Court upon Petitioner Beverley B. Schottenstein's ("Petitioner") Petition for Entry of Final Judgment Confirming Arbitration Award and Awarding Damages and Other Relief, ECF No. [1] ("Petition"). Respondents Evan A. Schottenstein and Avi E. Schottenstein's (collectively, "Respondents") filed an Amended Motion to Vacate Arbitration Award and Opposition to Beverly Schottenstein's Petition to Confirm, ECF No. [75] ("Motion to Vacate"). Petitioner filed an Opposition to Respondents' Amended Motion to Vacate Arbitration Award, ECF No. [80] ("Response").[1] The Court has carefully reviewed the Petition, the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court confirms the Arbitration Award in its entirety and denies Respondents' Motion.

---

[1] Respondents filed a limited Reply to Petitioner's Response stating that Petitioner's Response was untimely. *See* ECF No. [81]. Petitioner subsequently filed a Motion to Accept Late-Filed Opposition to Respondents' Amended Motion to Vacate Arbitration Award, which the Court granted. *See* ECF Nos. [82], [83].

I.      BACKGROUND

On February 5, 2021, Petitioner filed her Petition seeking to confirm the decision of a Financial Industry Regulatory Authority ("FINRA") arbitration panel that awarded her damages on her claims for constructive fraud, common law fraud, and elder abuse ("Award"). *See* ECF No. [1] at 1-2. The Award required Respondent Evan Schottenstein to pay Petitioner $9,000,000.00 in compensatory damages plus interest, $172,630.50 in costs, and one-half of Petitioner's attorney's fees. *Id*. at 2. The Award required Respondent Avi Schottenstein to pay Petitioner $602,251.00 in compensatory damages plus interest. *Id*. On March 8, 2021, Respondents filed their first Motion to Vacate the Arbitration Award, ECF No. [6].

On March 18, 2021, the parties filed a Stipulated Motion for Extension of Briefing Deadlines, ECF No. [14] ("Stipulated Motion"). In the Stipulated Motion, the parties stated that they had reached an "oral agreement concerning the amount of a settlement sum to be paid by [R]espondents to [P]etitioner to resolve [the Petition and the first Motion to Vacate]." *Id*. at 1. The Stipulated Motion stated that a "written settlement agreement [would] be prepared, revised, agreed upon, and executed by March 24, 2021." *Id.* The Stipulated Motion further stated that if "[R]espondents fail[ed] to timely make the settlement payment, the settlement agreement [would] be null and void and [the parties would] return to their present postures and positions in [the] action." *Id*. at 1-2. However, if Respondents timely made the settlement payment, Petitioner and Respondents would "stipulate to the voluntary dismissal of [the] proceeding." *Id*. at 2.

On March 19, 2021, the Court administratively closed the case without prejudice, pending the filing of a settlement agreement for the Court's "consideration and/or appropriate dismissal documentation." ECF No. [15] at 1. The Court further stated that should Petitioner and Respondents "fail to finalize a written settlement agreement and comply with the agreed payment

2

schedule, they [may] move to reopen the case and proceed with the claims asserted in [the] action." *Id*. On June 8, 2021, Petitioner filed her Motion to Reopen the Case stating that "[a]fter extensive negotiations, [the parties] have been unable to reach [an] agreement on the provisions and content of a written settlement agreement, and no written settlement agreement has been finalized." ECF No. [16] at 3. The Court subsequently granted the Motion to Reopen the Case. *See* ECF No. [18].

On March 7, 2022, Respondents filed the instant Motion to Vacate, arguing that the Court should vacate the Award. *See* ECF No. [75]. On March 22, 2022, Petitioner filed her Response, arguing that the Court should deny the Motion to Vacate and confirm her Award. *See generally* ECF No. [80].

## II.    LEGAL STANDARD

The Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (noting that where parties have seen fit to adopt arbitration clauses in their agreements, there is a "strong federal policy in favor of enforcing [them]"). Since the United States' accession to the New York Convention in 1970 "and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act, that federal policy applies with special force in the field of international commerce." *Mitsubishi Motors*, 473 U.S. at 631; *see also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) ("The adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context.").

Chapter 2 of the Federal Arbitration Act ("FAA") ratifies and incorporates the New York Convention. *See* 9 U.S.C. §§ 201-208; *see also Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d

1286, 1290 (11th Cir. 2004). "When reviewing an arbitration award, 'confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm.'" *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)).

Section 10 of the FAA permits courts to vacate arbitration awards under the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Finally, "the party seeking to avoid summary confirmance of an arbitral award has the heavy burden of proving that one of the . . . defenses applies." *Sural (Barbados) Ltd. v. Gov't of the Republic of Trinidad*, No. 1:15-CV-22825-KMM, 2016 WL 4264061, at *3 (S.D. Fla. Aug. 12, 2016) (quoting *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013)).

### III. ANALYSIS

#### a. Misconduct in Refusing to Postpone Hearing

Respondents first argue that by refusing to postpone the hearing indefinitely such that the hearing could be held in person rather than over videoconference, the arbitrators were guilty of misconduct prejudicial to Respondents. *See* ECF No. [75] at 21-23; FAA § 10(a)(3). Respondents

4

submit that the FINRA Code of Arbitration Procedure ("Code") includes several provisions related to moving a hearing location, s*ee* FINRA Rules 12213, 12600, 12800, but no provision allows arbitrators to dispense with an in-person location entirely. *See* ECF No. [75] at 22. The Code further provides that certain limited proceedings may be conducted in a manner other than through an in-person hearing, *see* FINRA Rules 12500, 12501, 12206(b)(4), 12504(a)(5), 12800, 12805, but the Code does not expressly provide that final hearings may proceed by videoconference. *See* ECF No. [75] at 22.

Respondents cite *Naing Int'l Enters., Ltd. v. Ellsworth Assocs., Inc.*, 961 F. Supp. 1, 3 (D.D.C. 1997), where the court determined that "if the failure of an arbitrator to grant a postponement or adjournment results in the foreclosure of the presentation of 'pertinent and material evidence,' it is an abuse of discretion. *See* ECF No. [75] at 21, 23. Respondents also cite *CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 F. App'x 701, 704 (11th Cir. 2016), where the Eleventh Circuit held that "[p]rejudice might occur when, for example, the arbitrator's choice not to postpone a hearing entirely prevents a party from presenting a key witness' material, noncumulative testimony." *See id.* at 23. In this case, Respondents argue that the panel's refusal to postpone the hearing deprived Respondents of key documents and witnesses. Respondents submit that non-parties Alexis Schottenstein and Wells Fargo Bank successfully opposed Respondents' efforts to obtain key documents and testimony during the arbitration proceedings by arguing that arbitrators may not compel third parties to produce documents without also compelling the third parties to appear in person at the hearing. *See id.* at 22-23 (citing *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1159-60 (11th Cir. 2019) (an "arbitrator's subpoena power [is restricted] to situations in which the non-party has

5

been called to appear in the physical presence of the arbitrator and to hand over the documents at that time")).

Petitioner responds that a court may vacate an arbitration award under Section 10(a)(3) only where the movant proves that "no reasonable ground existed" for refusing to postpone the proceedings. ECF No. [80] at 10 (quoting *Liberty Secs. Corp. v. Fetcho*, 114 F.Supp.2d 1319, 1322 (S.D. Fla. 2000); citing *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991)). In this case, Petitioner notes that she demanded arbitration on July 24, 2019, *see* ECF No. [1] ¶ 4, and the panel scheduled the parties' final evidentiary hearing to begin on October 19, 2020, almost eighteen (18) months after she first demanded arbitration, *see* ECF No. [80] at 12. Petitioner argues that when refusing Respondents' request for an indefinite postponement, the panel likely considered Petitioner's advanced age and the panel's obligation to expeditiously resolve the dispute. *See id.*

In addition, Petitioner argues that the panel's refusal to postpone the proceeding was not the reason Respondents were unable to present pertinent evidence from Alexis Schottenstein and Wells Fargo Bank. *See id.* at 11. According to Petitioner, on October 19, 2020, Respondents filed a petition to enforce non-party arbitration subpoenas directed at Alexis Schottenstein and Wells Fargo Bank. *See Avi Schottenstein et al. v. Wells Fargo Bank, N.A.*, No. 20-mc-81924, ECF No. [1]. In that petition, Respondents made the following allegations as to subject matter jurisdiction:

> 7. This is a proceeding to enforce arbitration subpoenas (summonses) arising under Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7.
>
> 8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties to the underlying arbitration are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

*Id.* at 2 (emphasis omitted). However, for diversity subject matter jurisdiction, the relevant focus is the citizenship of the parties to the subpoena enforcement proceeding – Alexis Schottenstein and Wells Fargo Bank – not the parties to the underlying arbitration – Beverly Schottenstein, Evan

6

Schottenstein, and Avi Schottenstein. Because Respondents failed to establish diversity of citizenship, the court denied their petition. *See Avi Schottenstein et al. v. Wells Fargo Bank, N.A.*, No. 20-mc-81924, ECF No. [26].[2] The court subsequently dismissed the action on February 19, 2021, after Respondents filed a notice of voluntary dismissal. *See Avi Schottenstein et al. v. Wells Fargo Bank, N.A.*, No. 20-mc-81924, ECF No. [34]. As such, Petitioner argues that Respondents' failure to plead and prove federal subject matter jurisdiction in their petition resulted in the panel not considering certain documents and witnesses, and not the panel's refusal to postpone the hearing indefinitely.

The Court agrees with Petitioner. As Petitioner rightly argues, a court may vacate an arbitration award under section 10(a)(3) only where the movant proves that "no reasonable ground existed" for refusing to postpone. *See Liberty*, 114 F.Supp.2d at 1322 (citing *Schmidt*, 942 F.2d at 1574). Petitioner points out that the Eleventh Circuit in *Schmidt*, 942 F.2d at 1573-74, declined to vacate an arbitration award under Section 10(a)(3) where the panel's possible, unstated consideration of any number of factors, including the desire for an expeditious resolution of the dispute, justified the panel's refusal to postpone a hearing. Similarly, in this case, Respondents fail to meet their burden of establishing that there were no reasonable grounds to refuse an indefinite postponement of the arbitration proceeding. Rather, the record establishes that Petitioner demanded arbitration on July 24, 2019, ECF No. [1] ¶ 4, and the panel scheduled the parties' final evidentiary hearing to begin on October 19, 2020, almost eighteen (18) months after Petitioner first demanded arbitration. Given the lengthy period of time that had already lapsed, the panel likely considered their responsibility to expeditiously resolve the dispute when denying Respondents' request for an indefinite postponement of the proceeding.

---

[2] The FAA does not create independent federal question subject matter jurisdiction under 28 U.S.C. § 1331. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).

In addition, upon review and consideration, it is evident that Respondents' failure to establish subject matter jurisdiction for the subpoenas directed at Alexis Schottenstein and Wells Fargo Bank was part of the reason Respondents were unable to present additional evidence and testimony. As such, Respondents fail to persuade the Court that the panel's refusal to grant an indefinite postponement resulted in the improper foreclosure of material evidence justifying vacatur of the Award.

### b. Undue Means

Next, Respondents argue that Petitioner procured the Award by undue means because Petitioner withheld documents and solicited privileged information. *See* ECF No. [75] at 24-26. Respondents aver that the withholding of Petitioner's "black book" prejudiced Respondents because Petitioner used the black book to testify that Respondents were responsible for the unauthorized use of her Chase Bank accounts. *See id.* at 24-25. Respondents argue that if Respondents had access to the black book, they would have been able to obtain a subpoena directed at Chase Bank, investigate the usage of Petitioner's accounts, and demonstrate that Respondents did not use Petitioner's accounts. *See id.* Also, Respondents argue that Petitioner failed to produce in discovery Cathy Pattap's eight-page single-spaced statement, which outlined Evan Schottenstein's alleged misconduct and over 500 pages of documents reflecting communications between Alexis Schottenstein and Petitioner's counsel. *See id.* at 25 (citing *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 993 (8th Cir. 1999)). Lastly, Respondents argue that Petitioner's reliance on privileged communications supplied by Cathy Pattap for five (5) weeks is both unethical and precisely the type of "underhanded or conniving ways of procuring an award" that violates the FAA. *See id.* at 25-26 (citing *Hoolahan v. IBC Advanced Alloys Corp.*,

8

947 F.3d 101, 112-13 (1st Cir. 2020); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992)).

Petitioner responds that the Eleventh Circuit has held that in order to vacate an arbitration award for undue means, the movant must (1) prove fraud or undue means by clear and convincing evidence; (2) show that the movant could not have discovered the fraud or undue means by the exercise of due diligence; and (3) prove that the fraud or undue means is materially related to an issue in arbitration. *See* ECF No. [80] at 6 (citing *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988)). Further, Petitioner submits that in this context, undue means are "measures equal in gravity to bribery, corruption or physical threat to an arbitrator." *Id.* (quoting *Liberty Secs. Corp. v. Fetcho*, 114 F.Supp.2d 1319, 1321-22 (S.D. Fla. 2000)). Petitioner argues that the black book, the eight-page statement, and 500 pages of documents were eventually produced, and the delayed production did not constitute undue means. *See id.* Petitioner also points out that the panel questioned Cathy Pattap extensively regarding her involvement. *See id.* at 7. Petitioner further contends that Respondents offer no legal basis for vacating the Award based on the delayed production of the documents or Cathy Pattap's involvement in the case. *See id.* at 7.

The Court agrees with Petitioner. As Petitioner correctly argues, the Eleventh Circuit has held as follows:

> In reviewing cases under § 10(a), courts have relied upon a three part test to determine whether an arbitration award should be vacated for fraud. First, the movant must establish the fraud by clear and convincing evidence. Second, the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration. Third, the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration.

*Bonar*, 835 F.2d at 1383. Although the Eleventh Circuit's holding in *Bonar* is stated in terms of "fraud," courts have applied the standard to both claims of fraud and undue means. *See e.g.*, *Liberty*, 114 F. Supp. 2d at 1322; *V5 Invs., LLC v. GoWaiter Bus. Holdings, LLC*, 210 F. Supp. 3d

9

at 1332. As such, the Court applies the *Bonar* standard to Respondents' claim of undue means. Further, this Court has previously held – and the Eleventh Circuit has affirmed – that undue means in this context are "measures equal in gravity to bribery, corruption, or physical threat to an arbitrator." *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1355 (S.D. Fla. 2018) (Bloom, J.), *aff'd sub nom. Floridians for Solar Choice, Inc. v. Paparella*, 802 F. App'x 519 (11th Cir. 2020).

Applying *Bonar*, the Court determines that Respondents have not established undue means by a clear and convincing standard. The documents in question were presented before Petitioner testified. *See* ECF No. [80-1] at 30-32. Respondents had an opportunity to question Petitioner regarding the black book. *See id.* at 35-38. The panel had the opportunity to question Cathy Pattap regarding her involvement. *See* ECF No. [80] at 7; *see also* ECF No. [80-2] at 2. In addition, Respondents notably fail to set forth any binding legal authority from the Eleventh Circuit establishing that such factors constitute undue means. This Court does not consider such matters to be measures equal in gravity to bribery, corruption, or physical threat to an arbitrator. Given binding Eleventh Circuit precedent, the Court need not consider Respondents' cases from sister circuits.[3]

---

[3] Nonetheless, the Court notes that in *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 993 (8th Cir. 1999), the Eighth Circuit determined that the district court erred in determining that the movant met its burden of establishing undue means in part because the district court did not determine whether the withholding of documents constituted intentional misconduct. In contrast, in this case, the Court considers and rejects Respondents' claim that there was intentional misconduct on the part of Petitioner and finds that the withholding of the documents does not amount to intentional misconduct equal in gravity to bribery, corruption, or physical threat to an arbitrator. Second, the First Circuit's definition of undue means as "underhanded or conniving ways of procuring an award," *Hoolahan v. IBC Advanced Alloys Corp.*, 947 F.3d 101, 112-13 (1st Cir. 2020), and the Ninth Circuit's definition of undue means as "behavior that is immoral if not illegal," *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992), is inapposite given precedent from within the Eleventh Circuit and this Court establishing undue means as intentional misconduct equal in gravity to bribery, corruption, or physical threat to an arbitrator. *See, e.g., Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1355 (S.D. Fla. 2018), *aff'd sub nom. Floridians for Solar Choice, Inc. v. Paparella*, 802 F. App'x 519 (11th Cir. 2020), *Liberty*

### c. Evident Partiality

Respondents argue that the arbitrators failed to make required disclosures and otherwise exhibited evident partiality. *See* ECF No. [75] at 26-32. In support, Respondents first submit that Arbitrator Solomon failed to disclose a personal lawsuit against State Farm, Evan Schottenstein's subsequent employer. *See id.* at 26-27. Second, Respondents argue that Arbitrator Scutti was misclassified as a public arbitrator. *See id.* at 28. Respondents claim that Arbitrator Scutti's background working for the SEC for four (4) years and working in securities law for twenty-two (22) years required him to be classified as a non-public arbitrator. *See id.* Further, when JP Morgan challenged Arbitrator Scutti's classification, Arbitrator Scutti asked the FINRA staff whether JP Morgan was the party challenging his partiality, and the FINRA staff confirmed that JP Morgan was challenging his classification. *See id.* at 29. Respondents submit that the exchange made it impossible for Arbitrator Scutti to be impartial. *See id.* In addition, Respondents stress that Arbitrator Scutti employed Petitioner's handwriting expert in a previous case. *See id.* at 30.

Petitioner responds that to vacate an arbitration award for "evident partiality," a movant must prove that (1) an actual conflict of interest between an arbitrator and a party exists; or (2) an arbitrator actually knows of, but fails to disclose, information that would lead a reasonable person to believe that a potential conflict exists. *See* ECF No. [80] at 8 (citing *World Bus. Paradise, Inc. v. SunTrust Bank*, 403 F. App'x 468, 470 (11th Cir. 2010)). Further, if an actual conflict does not exist, a movant must show that the partiality is "direct, definite, and capable of demonstration rather than remote, uncertain and speculative." *Id.* (quoting *Univ. Commons-Urbana, Ltd. v. Univ. Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002)). With regard to Arbitrator Solomon,

---

*Secs. Corp. v. Fetcho*, 114 F.Supp.2d 1319, 1321-22 (S.D. Fla. 2000); *V5 Invs., LLC v. GoWaiter Bus. Holdings, LLC*, 210 F. Supp. 3d 1329, 1332 (M.D. Fla. 2016).

11

Petitioner avers that Respondents' argument is essentially that Arbitrator Solomon may have ill-will toward an insurance company that denied her homeowner's policy claim and that she may take out that ill-will on Evan Schottenstein. *See id.* Petitioner argues that such speculation is not direct, definite partiality that is capable of demonstration. *See id.* With regard to Arbitrator Scutti, Petitioner argues that Respondents fail to explain how Arbitrator Scutti's classification creates a conflict between Arbitrator Scutti and Respondents or how the classification creates any reasonable impression of partiality. *See id.* at 9. Petitioner also contends that Respondents fail to provide any evidence of actual or potential conflict, or direct and definite partiality capable of demonstration, arising from Arbitrator Scutti's exchange with the FINRA staff and his prior retention of the handwriting expert. *See id.* at 9-10.

The Court agrees with Petitioner. As Petitioner rightly notes, the Eleventh Circuit held in *World Bus. Paradise*, 403 F. App'x at 470, "[a]n arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." Petitioner is also correct that if an actual conflict does not exist, a movant must show the partiality is "direct, definite, and capable of demonstration rather than remote, uncertain and speculative." *Univ. Commons-Urbana, Ltd. v. Univ. Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002).

Here, Respondents do not claim an actual conflict between the arbitrators and the parties themselves. Respondents' arguments are instead based on potential conflicts. However, Arbitrator Solomon's personal lawsuit against Evan Schottenstein's subsequent employer State Farm is not partiality that is direct, definite, and capable of demonstration but rather remote, uncertain, and speculative. In addition, Respondents fail to establish how Arbitrator Scutti's classification as a

public arbitrator, his exchange with the FINRA staff, and his prior retention of Petitioner's handwriting expert amount to partiality that is direct, definite, and capable of demonstration. Each allegation appears to set forth remote, uncertain, and speculative partiality.

The Eleventh Circuit cases that Respondents cite in support of their argument are instructive on this matter. First, in *Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1310 (11th Cir. 1998), the arbitrator's law firm had previously represented one of the parties. Nonetheless, the Eleventh Circuit held that the conflict did not amount to evident partiality. *See id.* at 1313. Similarly, in *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir. 1995), the Eleventh Circuit held that in an arbitrator's undisclosed dispute with an attorney at the law firm representing one of the parties did not create any "reasonable impression of partiality," and was not a sufficient basis for vacating the arbitration award. Such examples of conflicts that were insufficient to vacate an arbitration award make evident that Arbitrators Solomon and Scutti's potential conflicts fail to establish evident partiality.

Respondents cite to *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1338 (11th Cir. 2002) for support. There, the Eleventh Circuit held that the arbitrator's concurrent legal interactions with lawyers who represented one of the parties in the arbitration and the arbitrator's meeting with the president of one of the parties in the arbitration raised an issue of evident partiality. In *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1204 (11th Cir. 1982), the Eleventh Circuit affirmed the vacatur of an arbitration award where the arbitrator failed to disclose that his family-owned insurance company was in adversarial litigation with one of the parties to the arbitration. Unlike the arbitrators in *Univ. Commons-Urbana* and *Middlesex*, who had a direct conflict with one of the parties, Arbitrators Solomon and Scutti do not have a direct conflict with Petitioner or Respondents. As such, all of Respondents' Eleventh Circuit cases undermine their

argument that Arbitrators Solomon and Scutti's potential conflicts warrant vacatur of the Award. Given binding Eleventh Circuit precedent, the Court need not continue.[4]

### d. Refusal to Hear Evidence

Respondents argue that the panel refused to consider a video recording in which Petitioner stated that she would have invested more in Coatue if she could. *See* ECF No. [75] at 32-33. Respondents claim that they were prejudiced by the panel's refusal to consider the evidence because it contradicted Petitioner's argument that she had never heard of Coatue. *See id.* Further, Respondents argue that the panel should have considered a video recording where Petitioner stated that she should have "double" what she had. *See id.*

Petitioner responds that the panel addressed the possibility of admitting the video recordings but ultimately declined to admit them because Respondents had secured them without Petitioner's consent. *See* ECF No. [80] at 12-13. The panel excluded the video recordings after hearing Petitioner's argument that, pursuant to Fla. Stat. § 934.03, the video recordings were unlawful interceptions of Petitioner's oral communications. As such, Petitioner argues that the panel properly excluded the video recordings based on an evidentiary ruling that was stated on the record, and Respondents were not prejudiced. *See id.* at 13.

The Court agrees with Petitioner. As Petitioner rightly notes, the Eleventh Circuit has stated that arbitrators have wide latitude in conducting arbitration hearings and that they are not constrained by formal rules of procedure or evidence. *See Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007) (citing *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir. 1992)).

---

[4] As a final note on this matter, Respondents include a footnote stating that Arbitrator Rich failed to disclose that he had a prior lawsuit where he sued a landscaping company and its principal. *See* ECF No. [75] at 27 n.22. Respondents do not further elaborate on why the failure to disclose the lawsuit resulted in any evident partiality. Given Respondents' failure to explain why Arbitrator Rich's prior lawsuit has any relevance to the parties in the instant case, Respondents' argument is unpersuasive.

Further, a federal court may vacate an arbitration award only where an arbitrator's refusal to hear pertinent and material evidence actually prejudiced the rights of parties to the arbitration proceedings. *Id*. In this case, it is evident that the panel did not haphazardly exclude pertinent evidence. Rather, the panel considered the admissibility of the video recordings before excluding them. *See* ECF No. [80-1] at 7-26.

In addition, the Court is not persuaded by Respondents' reliance on *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1301 (11th Cir. 2015), and *Robbins v. Day*, 954 F.2d 679, 684-685 (11th Cir. 1992). Respondents assert that each case supports vacatur where the arbitrator fails to consider evidence put forth prior to the arbitration hearing. In *Johnson*, 797 F.3d at 1301, the plaintiffs' arguments were unavailing because they failed to explain why certain evidence was relevant and "baldly assert[ed]" that the arbitrator did not consider the evidence. In contrast, in the instant case, Respondents identified the video recordings and the relevance of the video recordings. Nevertheless, Respondents' argument is similarly unavailing because the record in this case establishes that the panel specifically considered the video recordings and excluded them on reasonable grounds. *See* ECF No. [80-1] at 7-26.

Respondents cite *Robbins*, 954 F.2d at 684-685, for the proposition that the "failure to compel testimony constitute[s] refusal to hear evidence." ECF No. [75] at 32-33. However, Respondents do not explain how the panel's refusal to consider the video recordings amounts to the panel's failure to compel testimony. Nonetheless, the Court notes that in *Robbins*, the Eleventh Circuit held that an "arbitrator is not bound to hear all the evidence tendered by the parties; he need only give each party the opportunity to present its arguments and evidence." 954 F.2d 679, 685. As stated above, the panel gave Respondents an opportunity to present their arguments for

why the video recordings should be considered, and upon review, the panel reasonably denied Respondents' request to admit the video recordings. *See* ECF No. [80-1] at 7-26.

In accordance with the Eleventh Circuit's instruction to vacate an arbitration award only where an arbitrator's refusal to hear pertinent and material evidence actually prejudiced the rights of parties to the arbitration proceedings, the Court is not persuaded by Respondents' argument on this matter.

### e. Misbehavior Prejudicial to Respondents

Lastly, Respondents argue the arbitrators are guilty of misbehavior prejudicial to Respondents for their repeated inattention to the proceedings. *See* ECF No. [75] at 33-35. Respondents argue the arbitrators ignored the proceedings to sleep, text, talk on their phones or with others in their homes, and leave the camera frame altogether. *See id.* at 33. Respondents represent that Arbitrator Rich was not present for three (3) hours and was sleeping on fifty-four (54) occasions. Arbitrator Solomon slept for four (4) minutes and was off-camera on twenty-two (22) occasions. Arbitrator Scutti was distracted for twenty-four (24) minutes. Respondents cite *Hott v. Mazzocco*, 916 F. Supp. 510, 517 (D. Md. 1996), where the court stated that "[m]isconduct sufficient to warrant vacating an award is something patently egregious, such as an arbitrator sleeping during testimony or having *ex parte* contacts."

Petitioner responds that the arbitration hearing was almost 146 hours – or 8754 minutes – and that the total time that the arbitrators were purportedly inattentive to the arbitration hearing is exceedingly small compared to the total time for the hearing. *See* ECF No. [80] at 13. Petitioner also argues that Respondents do not identify any critical fact that the panel missed during their inattentive periods. *See id.*

The Court agrees with Petitioner. First, Respondents' reliance on *Hott* is not persuasive. The court in the District of Maryland was providing an illustrative example of what could be considered misconduct sufficient to vacate an award under the Maryland Annotated Code. *See* 916 F. Supp. at 517. Furthermore, *Hott* did not involve an arbitrator who had fallen asleep or was otherwise inattentive. Therefore, this Court considers the Maryland court's mention of a sleeping arbitrator to be dicta. *See Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us, whereas holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound." (citations and internal quotation marks omitted)). Further, as Petitioner correctly points out, the arbitrators in this case were inattentive for a relatively short period of time considering the length of the proceedings, and Respondents fail to identify any critical fact that the arbitrators missed as a result of their purported inattentiveness. In other words, Respondents fail to establish how the alleged misbehavior resulted in prejudice to Respondents.

    **f. Request for Hearing**

As a final matter, Respondents request a hearing given the "considerable factual record" and the "complexity of the legal arguments." ECF No. [75] at 35. As evident from the Court's discussion above, the Court has fully addressed the parties' arguments based on its review of the briefings and the record. Further, the Court is not persuaded by Respondents' argument regarding the purported "complexity of the legal arguments." The parties' arguments are clear from the briefings, and the Eleventh Circuit's binding precedent on the issues is well-established. As such, Respondents' request for a hearing is denied.

Case No. 21-cv-20521-BLOOM/Otazo-Reyes

IV. **CONCLUSION**

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Respondents' Motion to Vacate, **ECF No. [75]**, is **DENIED**.

2. The Petition, **ECF No. [1]**, is **GRANTED**.

3. The Award, **ECF No. [1] at 18-24**, is **CONFIRMED** in its entirety.

4. Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 8, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record